UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SPORTSPOWER LTD., a Hong Kong Limited Company, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 4:19-CV-00066 |
| CROWNTEC FITNESS MFG. LTD., a Taiwanese Limited Company and LI-JU HSIANG, an individual, | § § § § | JURY DEMANDED |
| Defendants. | § § | |

JOINT FINAL PRE-TRIAL ORDER

Pursuant to Local Rule CV-16, Rule 16 of the Federal Rules of Civil Procedure, and the Court's Amended Scheduling Order dated October 8, 2020 (Dkt.73), Plaintiff Sportspower Ltd. and Defendants Crowntec Fitness Mfg. Ltd. and Li-Ju ("Julie") Hsiang, submit this Proposed Joint Pretrial Order for the trial in Case No. 4:19-CV-00066-ALM .

## A.    COUNSEL FOR THE PARTIES

Plaintiff:

> Darin Klemchuk
> > darin.klemchuk@klemchuk.com
> Kirby Drake
> > kirby.drake@klemchuk.com
> Brian Casper
> > brian.casper@klemchuk.com
> KLEMCHUK LLP
> Campbell Centre II
> 8150 North Central Expressway, 10th Floor
> Dallas, TX 75206

Decker A Cammack
    dcammack@whitakerchalk.com
Brian Joel Smith
    bsmith@whitakerchalk.com
Whitaker Chalk Swindle & Schwartz PLLC
301 Commerce Street, Suite 3500
Fort Worth, TX  76102

Clement Cheng
    law@clemcheng.com
NEWHOPE LAW, PC
4522 Katella Avenue 200
Los Alamitos, CA 90720

Defendants:

Scott R. Brown, *pro hac vice*
    sbrown@hoveywilliams.com
Matthew B. Walters, *pro hac vice*
    mwalters@hoveywilliams.com
C. Blair Barbieri, *pro hac vice*
    bbarbieri@hoveywilliams.com
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057

John M. Hardy, Texas Bar No. 24059897
    jmh@hardylaw.com
HARDY COOK & HARDY, PC
2080 Three Lakes Parkway
Tyler, Texas 75703
(903) 561-8400   Fax: (903) 561-8228

## B.    STATEMENT OF JURISDICTION

This Court has original jurisdiction over the subject matter of the Patent Act and Lanham

Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject-matter jurisdiction

over the Texas state-law claims in this action under 28 U.S.C. § 1367 because these claims arise out

of the same transactions and occurrences giving rise to the federal Lanham Act claims.  The Court's Jurisdiction is not contested.

## C.     NATURE OF ACTION

This is an action for patent infringement arising under the Patent Act, 35 U.S.C. § 1 et seq., and for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125, as well as trademark infringement, unfair competition, and unjust enrichment under Texas state law.

Defendants, Crowntec Fitness Mfg. Ltd. and Li-Ju ("Julie") Hsiang (collectively, "Crowntec" or "Defendants") deny that Defendants infringe the asserted trademarks and deny that they infringe the asserted U.S. Design Patent No. D653,299 (the "'299 Patent"). Defendants seek judgement that (i) all claims against them be dismissed with prejudice and that all relief requested by Sportspower be denied; (ii) Defendants' registration for JP JUMP POWER® and Design is valid and subsisting and enjoys superior rights over those asserted by Plaintiff; (iii) the Court enter declaratory judgment in favor of Crowntec that Crowntec does not infringe the asserted trademarks or any valid claim of the '299 Patent; (iv) the Court enter declaratory judgment in favor of Crowntec that Hua-Lu ("Warren") Hsiang is an unnamed coinventor and co-owner of the '299 Patent, or in the alternative, that the '299 Patent is invalid; and (v) the Court award Crowntec their costs incurred as a result of this litigation and that this case be deemed exceptional and Crowntec be awarded reasonable attorney fees under 35 U.S.C. § 285 and 15 U.S.C. § 117.

## D.     CONTENTIONS OF THE PARTIES

### Plaintiff's Contentions

Because the Court has yet to rule on Plaintiff's Motion to Amend its complaint, Plaintiff includes the following contentions for this proposed final pretrial order:

Sportspower contends that Crowntec has infringed on its design patent and infringed on several of its trademarks. Sportspower also contends that Crowntec's registration for its "Jump Power" trademark (also known as the "JP Jump Power" mark) should be canceled because Sportspower used it first, and because Crowntec lied to the Patent and Trademark office in its trademark application and failed to use the mark in conjunction with the listed goods in the trademark application and registration, as set forth below:

Sportspower is a company formed under the laws of Hong Kong with a principal place of business in Hong Kong at: 20/F, Parkview Centre, 7 Lau Li Street Causeway Bay, Hong Kong. Samuel Chen is the CEO of Sportspower.

Defendant Crowntec is a Taiwanese company with a principal place of business in Taiwan at: Crowntec Fitness Mfg. Ltd.; 8th Floor, No. 592, Tong An Street; Taoyuan City, Taiwan; Tel: +886 3261980/ 3261981. Hua-Lu Hsiang is the Managing Director of Crowntec, and Li-Ju Hsiang is the General Manager of Crowntec.

Defendant Li-Ju Hsiang, is the General Manager of Crowntec and is the actual owner of record for the trademark JP JUMP POWER (U.S. Reg. Number 5,152,625), Li-Ju Hsiang is a citizen of Taiwan, residing at: 9F., NO. 592, Tong'an St., Taoyuan Dist., Taoyuan City, 330 Taiwan.

This is an action for patent infringement arising under the Patent Act, 35 U.S.C. § 1 *et seq.*, and for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125, as well as trademark infringement, unfair competition, and unjust enrichment under Texas law.

This Court has original jurisdiction over the subject matter of the Patent Act and Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject-matter jurisdiction over the Texas state-law claims in this action under 28 U.S.C. § 1367 because these claims arise out of the same transactions and occurrences giving rise to the federal Lanham Act claims.

The Court has personal jurisdiction over Crowntec because the acts that are the subject of Sportspower's claims, including trademark infringement and patent infringement, were committed by Crowntec, in part, in the State of Texas in this Judicial District. Crowntec conducts business through retailers, such as Dick's Sporting Goods, Walmart, and Wayfair, who offer or offered for sale the Accused Products through their websites. *See* Exhibits 3-6.[1] These websites make/made use of the infringing JUMP POWER trademark as well as in the case of Walmart and Wayfair, offered for sale and sold the Patent Infringing Product, defined below. The Dick's Sporting Goods site[2] and on information and belief, the Walmart and Wayfair sites, are active websites allowing consumers to place orders directly through the sites.[3] Texas residents residing in this Judicial District are/were able to purchase products directly through these websites. Therefore, Crowntec is doing business in this Judicial District and committing acts of infringement, unfair competition, and other wrongs in this Judicial District. As a consequence, Crowntec has purposefully availed itself of the laws of the State of Texas, and therefore, exercising personal jurisdiction over it is fair and proper. Crowntec has appeared in this action and is not challenging personal jurisdiction.

---

[1] The previously filed exhibits are hereby incorporated by reference.

[2] Customers in the Judicial District can purchase Crowntec's "Jump Power 14' Round Trampoline with Safety Enclosure Net" online through the Dick's Sporting Goods website for in-store pick up, and customers wishing to return trampolines purchased through the Dick's Sporting Goods website or wishing to purchase the Accused Products in person may do so at a Dick's Sporting Goods store, such as the Allen, Texas location within this Judicial District.

[3] The Trampoline 6.62' Hexagon with Safety Enclosure was out of stock and no longer available for purchase as of the time of the Original Complaint's filing. However, each site contains at least one product review.

The Court has personal jurisdiction over Li-Ju Hsiang because, as an officer of Crowntec, she most likely applied for the registration of the JP JUMP POWER trademark on behalf of Crowntec, but since she did so under her own name, she is a necessary party. She also registered the infringing mark with knowledge of Sportspower's rights to that mark and, upon information and belief, participated in the acts of Crowntec specifically aimed at the forum state to trade off the goodwill associated with Sportspower's use of the JUMP POWER trademark. She has appeared in this action and is not challenging personal jurisdiction.

Under 28 U.S.C. § 1391(b)(2), venue is proper in this Judicial District because a substantial part of the events giving rise to the claims of this action occurred in this Judicial District. Venue is also proper under 28 U.S.C. § 1391(c)(3) because none of the Defendants are residents of the U.S. As set forth in more detail below Crowntec has sold, offered for sale, and marketed the Accused Products to citizens of this State and in particular, citizens of this Judicial District through brick and mortar retail stores as well as active websites through which the Accused Products are offered for sale. Also, under 28 U.S.C. § 1391(c)(3), venue is proper in this Judicial District because a non-U.S. resident may be sued in any district.

Sportspower has sold backyard play equipment, including trampolines, under the SPORTSPOWER® trademark since at least as early as 2005. SPORTSPOWER® is a well-known brand of trampolines that is sold at major retailers in the United States such as Walmart, Sam's Club, Academy, and Amazon.com. SPORTSPOWER® trampolines were also previously sold at major retailers such as Sears, K-Mart, Toys "R" Us, The Sports Authority, and Sports Chalet. SPORTSPOWER®-branded trampolines are further sold at trampoline specialty stores such as Trampoline USA, which has both online and physical retail sales. In the United States, Sportspower

primarily sells SPORTSPOWER®-branded backyard play equipment such as swing sets, inflatable play structures, and trampolines. Sportspower also sells SPORTSPOWER®-branded game tables including table tennis and billiards. Sportspower further sells other types of play equipment such as bubble soccer, water spray mats, and tents.

Since approximately 2006, Sportspower has used the name JUMP POWER HARDWARE LTD., and JUMP POWER, to refer to the source of its trampolines and other products when selling to its retail customers in the U.S. such as Wal-Mart.  Sportspower had a functioning administrative office stationed in the Crowntec factory building in Dongguan China and the name that Sportspower used for the in-factory office was JUMP POWER. Major U.S. retail customers would visit Sportspower's JUMP POWER administrative office for inspection of products or reviewing of samples in the Crowntec factory building. Thus, both Crowntec and U.S. retail customers used JUMP POWER and SPORTSPOWER synonymously.

Sportspower owns a variety of trademark registrations including U.S. Trademark Registration No. 3,689,452 for SPORTSPOWER in Class 28, which was registered on September 29, 2009, and is now incontestable in connection with sporting goods, namely, trampolines, game tables and weightlifting machines. Exhibit 2.

Sportspower also owns U.S. Trademark Registration No. 5,151,272 for SPORTSPOWER in Class 35, which was registered February 28, 2017, in connection with "[w]holesale distributorships featuring sports equipment and sports equipment parts; Wholesale ordering services in the field of sports equipment and sports equipment parts; Wholesale services by direct solicitation by sales agents in the field of sports equipment and sports equipment parts; Wholesale store services

featuring sports equipment and sports equipment parts; On-line wholesale and retail store services featuring sports equipment and sports equipment parts."

SPORTSPOWER® was used as a trade name and service mark for sports equipment trade agency services since as early as 1996. Sportspower later promoted its SPORTSPOWER® and derivative trademarks in the United States for use on sports equipment since at least as early as 2005. Over the years, Sportspower's marks have become well known worldwide. As a result, Sportspower has attained valuable rights and goodwill in the mark SPORTSPOWER® and its derivative marks. As discussed below, these rights predate Crowntec's rights.

Sportspower also owns U.S. Trademark Registration No. 5,842,153 for STEELFLEX PRO® and U.S. Trademark Registration No. 4667641 for STLFLX® in Class 28 for trampolines. Sportspower also has common law trademark rights to the mark STEEL FLEX as it has used that mark since at least as early as 2012. Together, these marks form a family of "Steel Flex" trademarks.

Sportspower also owns U.S. Trademark Registration No. 5,842,153 for HIGH JUMP in Class 28 for trampolines.

Sportspower also owns U.S. Trademark Registration No. 3,448,852 for MY FIRST TRAMPOLINE and U.S. Trademark Registration No. 3,996,849 for the MY 1ST TRAMPOLINE design mark in Class 28 for trampolines.

In addition to the SPORTSPOWER® registrations, Sportspower owns common law rights to its JUMP POWER trademark in connection with trampoline products because it has used the words "JUMP POWER" to identify the source of its goods.

According to Walmart's records, Sportspower first used the JUMP POWER name at Walmart around 2006. Walmart considers JUMP POWER and SPORTSPOWER® to be basically synonymous.

U.S. retail customers referred to JUMP POWER and SPORTSPOWER synonymously. Being the OEM supplier for Sportspower, Crowntec knew of the trade name usage yet adopted "Jump Power" anyway.

Sportspower is also the exclusive licensee of U.S. Patent No. D653,299 (the '299 Patent). The patent is directed to an ornamental design for a hexagonal trampoline. As shown in detail below, in addition to infringing Sportspower's Marks, Crowntec has infringed the '299 Patent.

Crowntec advertised its own brand of trampolines during the time that it was an OEM manufacturer for Sportspower, but changed to JUMP POWER after it stopped making OEM products for Sportspower. Now, Crowntec manufactures and sells trampolines in competition with Sportspower using the mark JUMP POWER that is confusingly similar to Sportspower's JUMP POWER mark—a mark which has long been associated with Sportspower. As seen in Exhibit 5, the screenshot of the dickssportinggoods.com website shows that a Jump Power 14' Round Trampoline is being sold for $199.98 (marked down from $299.99). The advertisement prominently features the JUMP POWER mark. Exhibit 6 shows that the packaging for the 14' trampoline also features the JUMP POWER mark and further contains an image of the Patent Infringing Product.

The JUMP POWER mark used by Crowntec—even with the "JP" logo—is so similar in sight, sound, and meaning to the JUMP POWER mark used by Sportspower, that there is a likelihood of confusion.

Additionally, because of the long association in the marketplace caused by Sportspower's use of the two trademarks in relation to each other for over a decade, there is a likelihood of confusion between SPORTSPOWER® on the one hand and Crowntec's use of JUMP POWER on the other.

Use of JUMP POWER by Crowntec has led to actual confusion with Sportspower. By way of example, Nicholas Taylor, a manager at Academy, headquartered in Katy, Texas, was actually confused when he blamed Sportspower for Crowntec missing the Amazon Standard Identification Number (ASIN) on a "JUMP POWER" product that was being sold by Crowntec. An email from Nicholas Taylor to Sportspower shows that there was actual confusion in Texas when he thought that Sportspower was affiliated with or related to the JUMP POWER product.

Another example of actual confusion is when Menards' buyer blamed Sportspower for trademark infringement of the TenCate Permatron name regarding Crowntec's JUMP POWER product. A SPORTSPOWER®-branded product was replaced by Crowntec's "JUMP POWER" product, but the Menards' buyer thought that the two companies were related or affiliated and working together. Thus, the buyer had difficulty believing Sportspower's explanation that it was not the SPORTSPOWER®-branded product that had a trademark problem with TenCate Permatron.

Li-Ju Hsiang knew about Sportspower's use of the JUMP POWER name which was well known to Sportspower's customers because Sportspower had been using the JUMP POWER name since 2006. Due to the large volume of OEM production, Sportspower had a functioning administrative office stationed in the Crowntec factory building in Dongguan China and the name that Sportspower used for the in-factory office was JUMP POWER. Major US retail customers

would visit Sportspower's JUMP POWER administrative office for inspection of products or reviewing of samples in the Crowntec factory building.

In spite of the actual knowledge that Sportspower owned and used the trademark JUMP POWER, Crowntec's General Manager, Li-Ju Hsiang registered a stylized "JUMP POWER" design mark with the literal element of the mark consisting of "JP JUMP POWER." Although this registration was likely applied for on behalf of Crowntec, it was registered in the name of Li-Ju Hsiang and there is no record of its assignment filed with the U.S.P.T.O.

Li-Ju Hsiang, registered the stylized JUMP POWER logo as U.S. Trademark Registration No. 5,152,625 on February 28, 2017, which lists "[s]wings; Modular play centers consisting of panels, decks, platforms, handrails, slides, and steps all sold separately or in selected combinations; Seesaws; parlor games; Horizontal bars; Manually operated exercise equipment for physical fitness purposes; trampolines; Exercise treadmills; Bags specially adapted for sports equipment; Play balls."

While the literal element of the mark registered by Li-Ju Hsiang is "JP JUMP POWER," the mark is a design mark with the overall impression of being for the words "Jump Power" below a JP logo:



However, Jay Hines (Hsiang's attorney who prosecuted the application and signed the declarations stating that "all statements made of [his] knowledge are true") admitted that he had no personal knowledge on which to base his declaration in the Statement of Use that the mark was

used in commerce and did not actually know if the mark was ever used in commerce in the United States.

Both Hsiang and Hines admitted that this version of the design mark was not actually on any of the specimens submitted along with the application.

Both Hsiang and Hines also admitted that the mark was not used on all of the goods listed in the application and Hines testified that the statement in the Statement of Use that the "mark is in use in commerce on or in connection with all of the goods/services" was not true.

Sportspower used the JUMPPOWER trademark as a trade long before Crowntec's or Li-Ju Hsiang's alleged use of the JP JUMP POWER mark in commerce.

Sportspower has also promoted its SPORTSPOWER branded products in the United States since at least as early as 1996 and identified the source of its goods using JUMP POWER since as early as 2006. Sportspower's marks are also well-known worldwide. As a result, Sportspower has attained rights to the JUMP POSWER mark that are superior to Crowntec's or Li-Ju Hsiang's use and registration.

The marks are similar, have similar customers and similar goods, which raise a likelihood of confusion. As a result, the continued existence of U.S. Reg. Number 5,152,625 is causing harm to Sportspower.

In her application for registration, Li-Ju Hsiang declared under penalty of perjury that "the applicant is the owner of the trademark/service mark sought to be registered; the applicant is using the mark in commerce on or in connection with the goods/services in the application."

On information and belief, Li-Ju Hsiang has never used the trademark on any products of her own.

Sportspower filed a petition to cancel U.S. Trademark Registration No. 5,152,625 with the United States Trademark Trial and Appeal Board on April 17, 2017. This cancellation proceeding is currently pending as Cancellation Number 92065939 and is based on priority of use, actual confusion, and likelihood of confusion, but has been suspended pending the final determination of this suit.

Crowntec also imports trampolines into the U.S. bearing the STEEL FLEX mark and has imported over 1200 trampolines described as "12 FOOT TRAMPOLINE WITH STEEL FLEX ENCLOSURE."

According to customs importation documents, Crowntec, through one of its manufacturers, shipped 314 units on March 12, 2018; 323 units on March 29, 2018; 315 units on June 16, 2018; and 314 units on September 5, 2018. All of these shipments were imported from Shanghai, China to ports in either Los Angeles, California, or Savana, Georgia.

Those shipments were imported to XDP Recreation, LLC, a Georgia company that sells the trampolines with the infringing STEELFLEX mark throughout the U.S. via Walmart, Amazon, and other retailers.

Crowntec printed the STEEL FLEX mark on the XDP packaging with full knowledge that this mark had been used by Sportspower on its trampolines.

Upon information and belief, there are other XDP trampolines manufactured and imported into the U.S. that use the infringing STEEL FLEX mark and in 2017 and 2018, a total of 15 containers totaling 5332 units were imported.

Upon information and belief, those infringing goods bore the infringing STEEL FLEX on their packaging and on the instructional manuals that come with the product at the time they were imported into the U.S.

Crowntec also uses the mark STEEL FLEX on its own branded products.

Sportspower has used its family of STEEL FLEX trademarks since 2012.

The STEEL FLEX, STLFLX, and STEEL FLEX PRO® marks, on one hand, and the STEEL FLEX mark used by Crowntec, on the other hand, are similar in sight, sound, and meaning; have similar customers and are used on similar goods; and are offered in similar channels of trade, all of which cause a likelihood of confusion. As a result, the continued sales and use of the STEEL FLEX mark is causing harm to Sportspower.

In addition to adopting similar trademarks, Crowntec has engaged in additional trademark infringement and unfair competition by offering for sale a HIGH JUMP branded trampoline and using pictures of Sportspower's products in its advertising. Additionally, has used pictures of Sportspower's MY FIST TRAMPOLINE in its own advertisements for trampolines advertised under the HIGH JUMP mark.

By using pictures of Sportspower's products in its advertising of its own products, consumers are likely to falsely believe there is an association between the two companies.

Unless enjoined, Defendants will continue to trade on the goodwill Sportspower has built in its marks and profit unfairly from its trademark infringement, unfair competition, and other wrongs. Defendants will also continue committing acts of patent infringement. Moreover, Sportspower has no ability to control the quality of the goods provided by Defendants in conjunction with its infringing JUMP POWER, STEEL FLEX, HIGH JUMP, and MY 1ST

TRAMPOLINE marks, and therefore, is at extreme risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

By way of example only, if end users or retailer customers of Crowntec receive an inferior product, they may mistakenly attribute that bad experience to Sportspower due to Crowntec's adoption of the same and confusingly similar marks. This is heightened by the fact that Crowntec and Sportspower are direct competitors selling competing products.

This is a case of a company (Crowntec) intentionally adopting the exact same and similar trademarks and trade name of its competitor (Sportspower). On information and belief, Crowntec is intentionally trading off the goodwill Sportspower has built.

### Defendant's Contentions

Plaintiff's Contentions appear to recite each and every allegation contained in Plaintiff's Third Amended Complaint. The Court has not authorized Plaintiff's Third Amended Pleading, which is presently the subject of motion practice. *See, infra,* Section I.1. Since Plaintiff's Third Amended Complaint is not the operative pleading in this action, Defendants have not had an opportunity to Answer any allegations contained in Plaintiff's Third Amended Complaint. Plaintiff inserted its above contentions (spanning pages 4-15) into this Final Pretrial Order at the eleventh hour, on November 20, 2020, the day this Joint Final Pretrial Order is due. Such late notice has deprived Defendants of an opportunity to provide the Court with a good-faith, tailored account of their responsive contentions. Accordingly, Defendants generally deny all of Plaintiff's Contentions and contest each issue of fact and law contained therein, unless otherwise specified in Section E. of this Final Pretrial Order.

Crowntec contends that Crowntec and Julie Hsiang have superior rights in the United States to the "Jump Power" trademark and their registered JP JUMP POWER® design mark, and therefore Defendants have not infringed on any rights Sportspower alleges to have in "Jump Power." If Plaintiff's Third Amended Complaint is allowed and becomes the operative complaint in this proceeding, Defendants contend that Julie Hsiang, either individually or through her attorney, did not knowingly make a false, material representation of fact, with an intent to deceive the U.S. Patent and Trademark Office, in connection with her application for the JP JUMP POWER® Mark. Defendants further contend that Warren Hsiang, as Managing Director of Crowntec, is a co-inventor of the asserted Design Patent, and therefore the named defendants have not infringed on any rights Sportspower, or its Chief Executive Officer, Samuel Chen, alleges to have in the Design Patent. Crowntec and Julie Hsiang further deny any infringement of Sportspower's other asserted trademarks.

In addition to its substantive defenses against the alleged trademark and patent infringement, Crowntec and Julie Hsiang also contend that Sportspower is barred by a number of affirmative defenses, including the doctrines of estoppel, waiver, acquiescence, laches, and unclean hands, and an absence of damages to Sportspower. Defendants reserve the right to supplement their contentions as appropriate and subject to the Court's rulings on pending motions and pretrial rulings. Defendants further incorporate herein by reference the below Stipulations and Uncontested Facts and the Contested Facts and Issues of Law as necessary or convenient to fully explain their contentions in this case.

## E.     STIPULATIONS AND UNCONTESTED FACTS

**Uncontested Facts**

1.      Defendant Crowntec is a Taiwanese company with a principal place of business in Taiwan, located at Crowntec Fitness Mfg. Ltd.; 8th Floor, No. 592, Tong An Street; Taoyuan City, Taiwan.

2.      Defendant Li-Ju ("Julie") Hsiang is a citizen of Taiwan, residing at 9F., NO. 592, Tong'an St., Taoyuan Dist., Taoyuan City, 330 Taiwan.

## F.      CONTESTED ISSUES OF FACT AND LAW[4]

### I.      CONTESTED ISSUES OF FACT AND LAW REGARDING THE PLEADINGS AS THEY CURRENTLY EXIST BEFORE THE COURT

1.      Whether Crowntec has infringed U.S. Patent No. D653,299 (the "'299 Patent");

2.      Whether Sportspower has common law U.S. trademark rights in the mark "Jump Power";

3.      Whether Hua-Lu ("Warren") Hsiang was a co-inventor of the '299 Patent;

4.      Whether the '299 Patent is invalid for failing to name its true inventors;

5.      Whether the '299 Patent is invalid for indefiniteness under 35 U.S.C. § 112 because one skilled in the art, viewing the design claimed in the '299 Patent would not be able to determine which portions of the drawn figures in the '299 Patent are part of the claimed design;

6.      Whether the '299 Patent is invalid because Sportspower disclosed and/or offered for sale and/or sold the subject matter of the claimed invention to U.S. retail customers more than a year prior to filing the application that resulted in the '299 Patent;

7.      Whether Sportspower's asserted common law trademark rights in the U.S. for "Jump Power", or any similar variation thereof, have been abandoned;

---

[4] Based on the pending motion before the Court, the parties have included contested issues in two separate sections, depending on the Court's ruling on Plaintiff's Motion for Leave to amend its pleadings.

8.   Whether Crowntec commenced use of "Jump Power" and the JP JUMP POWER® Mark prior to Sportspower's asserted use of "Jump Power";

9.   Whether Crowntec has superior rights in the "Jump Power" mark over those common law trademark rights asserted by Sportspower;

10.   Whether Crowntec has superior rights in the JP JUMP POWER® Mark over common law trademark rights in "Jump Power" asserted by Sportspower;

11.   Whether Crowntec has infringed Sportspower's asserted "Jump Power" trademark;

12.   Whether Crowntec's use of the JP JUMP POWER® Mark is likely to cause confusion, or mistake, or deceive the relevant consumers as to the source of Crowntec's products sold with that mark;

13.   Whether U.S. Trademark Registration No. 5,152,625 for the JP JUMP POWER® Mark should be canceled pursuant to 15 U.S.C. §1119;

14.   Whether Crowntec infringes Sportspower's Steel Flex, Jump Power, High Jump, and My 1st Trampoline trademarks through its importation of trampolines into the United States and promotion, distribution, and sales of the trampolines;

15.   Whether Crowntec has imported trampolines bearing the HIGH JUMP, MY FIRST TRAMPOLINE, or MY 1ST TRAMPOLINE trademarks into the United States without Sportspower's authority;

16.   Whether Crowntec has promoted, distributed, or sold trampolines bearing the HIGH JUMP, MY FIRST TRAMPOLINE, or MY 1ST TRAMPOLINE marks in the United States without Sportspower's authority;

17.   Whether Sportspower has suffered damages;

18.     The amount of damages Sportspower has suffered;

19.     Whether Crowntec should be permanently enjoined from importing trampolines bearing Sportspower's Steel Flex, Jump Power, High Jump, and My 1st Trampoline trademarks into the United States under 15 U.S.C. §1114 & 1116;

20.

21.     Whether Sportspower suffered alleged irreparable damages and has no adequate remedy at law and would therefore be entitled to an injunction regarding one or more of its asserted trademarks;

22.     Whether Crowntec's importation of Trampolines bearing the "Jump Power, Steel Flex, Stlflxx, Steelflex Pro, High Jump, My First Trampoline, and My 1st Trampoline" trademarks constitutes infringement, including contributory trademark infringement in violation of Sportspower's common law rights to its marks;

23.     Whether Crowntec should be permanently enjoined from using Sportspower's "Jump Power, Steel Flex, Stlflxx, Steelflex Pro, High Jump, My First Trampoline, and My 1st Trampoline" marks under Texas law;

24.     Whether Sportspower is entitled to damages for Crowntec's trademark infringement, unfair competition, and patent infringement;

25.     Whether Sportspower's claims are barred, in whole or in part, by failure to join one or more necessary parties;

26.     Whether Sportspower's claims are barred by the doctrine of unclean hands, namely Sportspower's and Sportspower's representatives' deceitful practices before the USPTO that relate

to trademark applications for JUMP POWER LTD. (U.S. Serial No. 88771458) and CROWNTEC (U.S. Serial No. 87929804);

27.     Whether Sportspower's claims are barred by the doctrine of estoppel;

28.     Whether Sportspower's claims are barred by the doctrine of waiver;

29.     Whether Sportspower's claims are barred by the doctrine of acquiescence; and

30.     Whether Sportspower's claims are barred by the doctrine of laches;

**II.     ADDITIONAL CONTESTED ISSUES OF FACT AND LAW THAT ARE CONTINGENT UPON THE COURT ENTERING PLAINTIFF'S THIRD AMENDED COMPLAINT**

**Plaintiff's Additional Contested Issues Contingent upon Entering Plaintiff's Third Amended Complaint**

1.     Whether Defendant Li-Ju Hsiang, through her attorney, made a false, or fraudulent declaration or representation in an attempt to secure the registration of the JP Jump Power trademark.

2.     Whether U.S. Trademark Registration No. 5,152,625 for the JP JUMP POWER® Mark should be canceled pursuant to 15 U.S.C. §§ 1119 & 1120;

**Defendants' Additional Contested Issues Contingent upon Entering Plaintiff's Third Amended Complaint**

1.     Whether Defendant Li-Ju Hsiang or her attorney knowingly made a false, material representation of fact, with an intent to deceive the U.S. Patent and Trademark Office, in connection with her application for the JP JUMP POWER® Mark.

Defendants supply this separately stated contested issue to comport with the legal elements required to establish fraud on the PTO, which Plaintiff's above statement does not follow. *See Yeti Coolers, LLC v. Bapex Int'l, LLC*, Case No. 1:19-CV-783-RP, 2020 U.S. Dist. LEXIS 77815 (W.D.

Tex. May 4, 2020) (identifying elements required to establish fraud on the PTO) (citing *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 693 n.14 (5th Cir. 1992)).

## G.   LIST OF WITNESSES

Plaintiff's Witness List is attached as Exhibit A.

Defendants' Witness List is attached as Exhibit B.

## H.   LIST OF EXHIBITS

Plaintiff's Exhibit List is attached as Exhibit C.

Defendants' Exhibit List is attached as Exhibit D.

Because the Court has not ruled yet on Defendants' Motion to Strike Plaintiff's Expert's "Supplemental" Report, Defendants reserve the right to supplement their Exhibit List with materials Defendants' expert may rely on in any supplemental report served in response to the Leathers' Report dated October 22, 2020.

## I.   LIST OF ANY PENDING MOTIONS

1. MOTION for Leave to File Amended Complaint by Sportspower Ltd. (Dkt. No. 74).

2. MOTION to Strike Plaintiff's Late Supplemental Expert Report of Mr. Leathers by Crowntec Fitness Mfg. Ltd. (Dkt. No. 90).

## J.   PROBABLE LENGTH OF TRIAL

The probable length of trial is 5 days.

## K.   MANAGEMENT CONFERENCE LIMITATIONS

The parties anticipate using a Court-approved interpreter for testimony for witnesses whose primary language is Mandarin Chinese.

Plaintiff also anticipates calling one or more witnesses using remote means.

Defendants object to any attempt during trial to call any witness for live testimony through means that are not in person, such as by live stream or video appearance. Defendants' objection is based on their right to a fair cross-examination of the witnesses, which would be compromised if the Court allows witness testimony by live stream or video appearance. Further, if the trial requires the in-person appearance of jurors, then the parties' witnesses should similarly be required to appear in person to provide live testimony.

## L.      CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1)      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)      Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)      Each exhibit in the List of Exhibits herein:

   (a)      is in existence;

   (b)      is numbered; and

   (c)      has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Attorneys for Plaintiff: /s/ Decker A. Cammack_____

Attorneys for Defendants: /s/ Scott R. Brown_____

This Joint Pre-Trial Order is hereby approved this day of March 24, 2021.

 **SIGNED this 24th day of March, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE